In the Matter of the Claim of JESSIE IRWIN et al., Respondents. GREENVILLE MILLS, INC., Appellant; MARTIN P. CATHERWOOD, as Industrial Commissioner, Respondent.

Third Department, December 10, 1959.

*Joseph F. Sharp* for appellant.

*Charles S. Tracy* for Textile Workers Union of America (AFL–CIO) and others, respondents.

*Louis J. Lefkowitz, Attorney-General,* for Industrial Commissioner, respondent.

FOSTER, P. J.   This is an appeal from a decision of the Unemployment Insurance Appeal Board which held claimants entitled to unemployment insurance benefits for the period July 1, through July 14, 1957.   The board has held in effect that claimants were unemployed during the time in question although it had been designated as a vacation period.

The issue before us involves the construction of a labor agreement entered into on March 14, 1955 between the Mohawk Carpet Mills, Inc., and the Textile Workers Union of America (CIO).   As a result of a merger of Mohawk Carpet Mills, Inc.,

with Alexander Smith, Inc., all production and maintenance operations of Mohawk Carpet Mills, Inc., were transferred to Greenville Mills, Inc., the employer-appellant here, and the latter assumed the obligations of Mohawk Mills under the labor agreement.

So far as the claimants here are concerned the issue may be narrowed to a construction of only two clauses in the contract. Although claimants received what might ordinarily be considered as pay for the vacation period it is conceded that this was a bonus for past services, and has no bearing on the question presented. Paragraph 10 of article XII of the contract provided: "It is agreed that the Company may, for causes mutually acceptable to the parties hereto, operate any one or more departments of the plant during the entire vacation period. The employees working during such vacation will be required to take a vacation at other times consistent with efficient operation of the plant but not later than December 15th."

Paragraph 14 (subd. [a]) provided: "Any provision of this contract to the contrary, notwithstanding, employees shall not be required to take time off for vacation purposes if they have drawn pay for less than 35 pay periods during the vacation year."

The question posed by these clauses in the contract is whether the union, representing the employees, agreed in advance that the employer might shut down its plant during the period designated by it for vacation purposes. If so, then the employees consented in advance to withdraw from the labor market and were not eligible to receive benefits (*Matter of Naylor* [*Shuron Opt. Co.— Corsi*], 281 App. Div. 721, affd. 306 N. Y. 794). If such consent is not to be implied from the clauses quoted then it must be found that claimants' unemployment was due to the employer's election not to operate its plant rather than claimants' consent not to work, and they would be entitled to benefits for involuntary unemployment.

The board found that paragraph 10 (art. XII) implied consent on the part of the union to a shut down of the plant since its permission was required if the company desired to operate any one or more of its departments during the vacation period. This clause in the agreement had been in a previous contract between the employer and the union, but when the contract in question was negotiated in 1955 a new clause was added, paragraph 14 (subd. [a]). The board held that this new clause rendered nugatory the provisions of paragraph 10 so far as union consent to a plant shut down was concerned, since it

exempted from the mandatory vacation requirements imposed by the company those employees who had drawn pay for less than 35 pay periods during the vacation year.

Some oral testimony was taken both before the Referee and also the Appeal Board. The president of the union local testified before the Referee that since 1948, when the previous labor agreement was negotiated, the union had never objected to the closing of the plant during the vacation period. At a hearing before the board a vice-president of the union testified that paragraph 14 (subd. [a]) of the agreement was negotiated to take care of employees who drew less than 35 pay checks, giving the company the consent of the union to require such employees to work during the vacation period, if they so desired, and not take time off at a later date. This testimony does not differ substantially from that given before the Referee by the personnel manager of the plant, and it does not afford a substantial factual basis for abrogating the provisions of paragraph 10 which had been in existence for many years. Absent such a factual basis the construction and interpretation of the contract became a matter of law (*Brainard* v. *New York Cent. R. R. Co.,* 242 N. Y. 125; *Hartigan* v. *Casualty Co.,* 227 N. Y. 175; 3 Williston, Contracts [rev. ed.], § 616).

It is a primary rule for the construction of a contract to interpret the writing as a whole, and to reconcile apparently conflicting provisions where it is reasonably possible to do so (1 Restatement, Contracts, § 235). Applying such rule to this case it seems clear that paragraphs 10 and 14 (subd. [a]) of the agreement can be reasonably reconciled. The latter is not totally repugnant to the former, for paragraph 10 dealt with employees and management generally, while paragraph 14 (subd. [a]) dealt with management and a limited number of employees — i.e., those who had less than 35 pay weeks to their credit. It seems quite incredible that the company would forego the right to shut down its plant during the regular vacation period, a right which all parties concede it had under paragraph 10 of the existing agreement and a previous agreement, in order to take care of an uncertain and limited number of employees who had less than 35 pay periods during the vacation year, and who might not be sufficient in number to man the plant. It is equally incredible, if such was the intention of the parties, that paragraph 10 would have remained in the agreement. The only logical and reasonable meaning to be attached to paragraph 14 (subd. [a]), in our opinion, is that it was intended to be limited to the class of employees

it specifies, and as to them it simply meant that they should not be required to take a vacation during the vacation period if the plant remained open, or to take a vacation later.

A point is made by respondents that claimants were laid off June 14, and the company, acting in bad faith, recalled them for work on June 24 in the face of a vacation period about to begin on July 1, and that this was done to prevent claimants from obtaining unemployment insurance benefits. We can find no substantial evidence in the record to sustain this charge of manipulation and bad faith.

The decision should be reversed and the claims dismissed.

COON, GIBSON, HERLIHY and REYNOLDS, JJ., concur.

Decision reversed and claims dismissed, without costs.